| | |
|---|---|
| HAYWARD INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZANY VALUES LLC d/b/a SPARKFISH, <br><br> Defendants. | **COMPLAINT** <br> **(Jury Trial Demanded)** |

Plaintiff Hayward Industries, Inc. ("Hayward" or "Plaintiff") is suing Zany Values LLC, *d/b/a* Sparkfish ("Sparkfish"), for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125; (2) unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) unfair competition by passing off in violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114; (5) common law trademark infringement and unfair competition under North Carolina law; (6) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1; (7) tortious interference with contract and business relations; and (8) unjust enrichment. These claims arise out of Sparkfish's infringement of Hayward's trademarks in connection with Sparkfish's unlawful and unauthorized advertisement and sale of Hayward-branded products on the internet, including the sale of non-genuine, defective, damaged, and/or poor-quality products bearing the Hayward trademarks.

## PARTIES

1. Plaintiff Hayward Industries, Inc, is a New Jersey corporation having its principal place of business located in Charlotte, North Carolina.

2. Defendant Zany Values LLC, d/b/a Sparkfish *a/k/a* Sparkfish Inc., is a limited liability company located at 520 S. 850 E. Suite B7, Lehi, Utah, 84043. Sparkfish advertises and sells product through national e-commerce platforms such as Amazon, where Sparkfish uses the storefront "Sparkfish." Defendant also uses its own retail website www.sparkfishinc.com that re-directs consumers to its Amazon Storefront: https://www.amazon.com/s?i=merchant-items&me=A27NGVKUPKCNVM

## JURISDICTION

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark, counterfeiting, and unfair competition cases), and 28 U.S.C. § 1367. Plaintiff's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims arising under the laws of the state of North Carolina are substantially related such that they form part of the same case or controversy under Article III of the United States Constitution.

4. This Court has personal jurisdiction over Sparkfish because it has purposefully availed itself of the privilege of doing business in North Carolina and has engaged in significant contacts with North Carolina, including advertising, sales, shipments, distribution, and/or offers thereof for counterfeit and infringing products bearing Hayward's trademarks in North Carolina and to North Carolina residents. Sparkfish has engaged in these tortious activities with the knowledge that Hayward is located in North Carolina and will be harmed by Sparkfish's actions in North Carolina.

5. Sparkfish has created interactive online storefronts on Amazon (called "Sparkfish") and on Walmart.com ("Sparkfish"), among others. Through these interactive online storefronts, Sparkfish actively advertises, markets, sells, ships, and distributes infringing products bearing

2

Hayward's trademarks in North Carolina and to North Carolina residents through the regular course of business. Sparkfish does not place any geographic restrictions on who can buy its products from these on-line retail sites, and, as such, these products and the ads for them are made available to residents of North Carolina as well as to residents of other states. For example, Sparkfish advertises that it is one of the "top 3rd party sellers on [Amazon] platform." See below:

Our Story

Sparkfish has grown and adapted with Amazon marketplace and is now one of the top 3rd party sellers on the platform.

Our Amazon store has over 11,000 active SKUs, with a 99% lifetime positive customer rating. We've taken this success and our amazing relationships with our partners and grown outside of Amazon. We've added our brick-and-mortar location and built some powerful technology to rent and sell products outside of Amazon. Always moving forward.

https://www.sparkfishinc.com/ (accessed March 12, 2026). In other words, via its own retail website and via national e-commerce sites like Amazon.com and Walmart.com, Sparkfish advertises and sells the counterfeit and trademark infringing products to consumers nationally, including to North Carolina. Sparkfish continues to engage in these actions even though Hayward notified it of its unauthorized conduct and warned it that if it persisted, Hayward would be forced to sue.

6.      Further, despite having been put on notice of its infringing activities, Sparkfish continues to engage in its tortious activities and to advertise, offer for sale, and/or sell its counterfeit and infringing products into North Carolina. Sparkfish intends its sales, distribution, shipping, marketing, and advertising of infringing goods to reach North Carolina and to affect Hayward's business operations in North Carolina, including but not limited to, causing confusion, mistake, or deceit among Hayward's customers.

7.      Venue is proper in this District under, without limitation, 28 U.S.C. § 1391(b)(2)-(3), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**FACTUAL BACKGROUND**

**A.      Hayward's Products and Associated Trademarks**

8.      Hayward is a century-old company that, for at least 60 years, has developed, manufactured, marketed, and sold cutting edge, environmentally responsible, and technologically advanced pool and spa equipment ("Hayward Products").  Over the years, Hayward has expanded its pool and spa equipment business into both residential and commercial markets and both in-ground and above ground pools and spas worldwide.  Such products include, for example, variable speed pumps, heaters, filters, robotic pool cleaners, light fixtures, salt water chlorination systems, and other products for running and maintaining swimming pools and spas. Hayward sells Hayward Products in the United States through Amazon.com, among other national online retail platforms, and through a network of authorized on-line and brick and mortar resellers, distributors, and retailers (collectively "Authorized Sellers").

9.      Hayward devotes a significant amount of time, energy, and resources to protecting the value of the Hayward brand, products, name, and reputation.  By distributing Hayward

4

Products exclusively through Authorized Sellers, Hayward is able to ensure the safety and satisfaction of consumers and maintain the integrity and reputation of the Hayward brand. Safety, quality, customer support, and innovation are fundamental to a customer's decision to purchase a product in the highly competitive pool and spa equipment industry.

10. To promote and protect the Hayward brand, Hayward has registered numerous trademarks with the United States Patent and Trademark Office, including, but not limited to:

- HAYWARD® (U.S. Trademark Reg. Nos. 3,969,301 and 1,058,211);

- H® (U.S. Trademark Reg. Nos. 4,016,737 and 1,132,980);

- SUPER PUMP® (U.S. Trademark Reg. No. 1,518,655);

- MAXFLO® (U.S. Trademark Reg. No. 6,048,151);

- TRISTAR® (U.S. Trademark Reg. No. 3,190,201);

- POWER-FLO® (U.S. Trademark Reg. No. 2,075,752);

- AQUA RITE® (U.S. Trademark Reg. Nos. 3,704,835);

- GOLDLINE® (U.S. Trademark Reg. No. 5,726,797);

- PRO LOGIC® (U.S. Trademark Reg. No. 3,538,131)

(collectively, the "Hayward Trademarks").

11. The registrations for the Hayward Trademarks are valid and in full force and effect.

12. Hayward first registered the HAYWARD® mark in 1977 and has actively used the mark since at least as early as 1956. A number of the trademarks listed above have been in use and/or registered for twenty years or more and are incontestable.

13. Hayward actively uses all of the Hayward Trademarks in commerce throughout the United States to advertise, market, offer for sale, and sell the Hayward Products.

5

14. Consumers recognize the Hayward Trademarks as being associated with innovative, safe, and high-quality pool and spa equipment.

15. Because of the innovation, safety, and quality of Hayward products, consumers trust the Hayward brand and associate the Hayward name with innovative, safe, and high-quality pool and spa equipment.

16. For all of these reasons, the Hayward Trademarks are widely recognized by the general consuming public of the United States and Hayward is recognized as the source of products bearing the Hayward Trademarks.

17. Due to the superior quality and exclusive distribution of Hayward Products, and because Hayward is uniquely recognized as the source of these high quality products, the Hayward Trademarks have considerable value.

**B.     Hayward Has Implemented Strict Quality Controls to Protect the Value of the Hayward Trademarks and to Ensure Customers Receive the Genuine, High Quality Products They Expect from Hayward**

18. Recognizing the risks to consumers and to the Hayward reputation caused by the sale of poor quality Hayward Products, Hayward has implemented quality controls that apply to Hayward Products sold in both brick-and-mortar stores and online.  Such controls help to protect consumers and the value and goodwill associated with the Hayward brand.

19. One goal of these quality controls is to ensure that consumers who purchase Hayward Products online receive products that feature all of the special characteristics that consumers have come to expect from Hayward–including quality and reliability.

20. The quality controls also seek to minimize the likelihood that poor quality products will reach consumers.  Preventing consumers from receiving damaged, defective, and poor quality products protects consumers from confusion and unsafe products and protects the value and goodwill associated with the Hayward brand.

6

21.     Hayward abides by its quality control requirements and requires its Authorized Sellers to abide by the quality control requirements.

22.     Hayward's ability to exercise these quality controls is essential to the integrity, safety, and quality of Hayward Products, as well as to the value of the Hayward Trademarks and other intellectual property.

## C.     Authorized Sellers Are Required to Adhere to Hayward's Quality Control and Customer Service Requirements

23.     Hayward maintains strict quality controls over Hayward Products by selling its products to customers through its network of Authorized Sellers.

24.     Hayward permits Authorized Sellers to sell Hayward Products in specific channels (online or brick and mortar) and requires Authorized Sellers to abide by applicable authorized seller policies and agreements relating to quality controls, customer service, and other sales practices (collectively, the "Hayward Policies").

25.     The Hayward Policies limit to whom and where Authorized Sellers may sell Hayward Products online. For example, Hayward permits a sub-class of Authorized Sellers ("Authorized Resellers") to sell Hayward Products only to end users (as opposed to other distributors or retailers).  Authorized Resellers are specifically prohibited from selling products to other resellers or to anyone who intends to resell the products.  In that way, Hayward can maintain its quality controls because it can track its Authorized Sellers and Authorized Resellers to ensure that they are abiding by the Hayward Policies.[1]

---

[1] Unless otherwise noted, the term "Authorized Sellers" refers to all classes of sellers in Hayward's distribution chain, including Authorized Resellers and Authorized Online Resellers.

26.     Authorized Sellers (and its sub-classes) are also prohibited from selling products through unauthorized channels, such as certain third-party online marketplaces like Amazon, eBay, or Walmart.com, without prior written consent from Hayward.

27.     These requirements are essential to Hayward's ability to exercise its quality controls over Hayward Products because they allow Hayward to track which of its Authorized Sellers are approved to sell online and where its Authorized Sellers are selling online.  If a quality issue arises through an online sale, Hayward can identify the Authorized Seller that made the sale, contact the Authorized Seller, and address the issue immediately.  Hayward is unable to take such action against unauthorized sellers because, for example, it doesn't always know who these sellers are and cannot obtain their cooperation in addressing any product quality issues that may arise.

28.     In addition to limiting where and how Authorized Sellers can sell Hayward Products, the Hayward Policies also require Authorized Sellers to adhere to Hayward's quality control requirements related to the inspection, handling, and storage of Hayward Products.

29.     To ensure that customers receive the genuine and high-quality products they expect from Hayward, the Hayward Policies require that Authorized Sellers inspect all Hayward Products for damage, defects, broken seals, evidence of tampering, and other non-conformance and remove all such products from inventory. Authorized Sellers are prohibited from selling damaged or defective products. Further, to assist Hayward in identifying any product quality issues, Authorized Sellers are required to report any defects to Hayward.

30.     The Hayward Policies also require that Authorized Sellers comply with all instructions provided by Hayward regarding product storage, handling, and shipping. This requirement helps ensure that Hayward Products are stored properly and are not damaged before being shipped to the consumer.

8

31. To avoid consumer confusion and ensure that customers receive genuine Hayward Products, Authorized Sellers are prohibited from relabeling, repackaging, or altering Hayward Products. Authorized Sellers must not remove, translate, or modify the contents of any label or literature on or accompanying Hayward Products. Further, Authorized Sellers are prohibited from tampering with, defacing, or otherwise altering any identifying information on Hayward Products, including any serial number, UPC code, batch or lot code, or other identifying information.

32. Hayward also ensures that consumers receive safe products by requiring that Authorized Sellers assist with recalls and other consumer safety information efforts.

33. The Hayward Policies also require that Authorized Sellers provide certain services to their customers. Authorized Sellers must familiarize themselves with the special features of all Hayward Products kept in their inventory. This requirement ensures that Authorized Sellers are uniquely qualified to advise customers on the selection and safe use of Hayward Products.

34. Following the sale of Hayward Products, Authorized Sellers supply ongoing support to end-user consumers and are required to provide customer service and support by promptly responding to consumer inquiries and complaints.

35. Hayward's quality control requirements are legitimate and substantial and have been implemented so that Hayward can control the quality of goods manufactured and sold under the Hayward Trademarks, so as to protect consumers, as well as the value and goodwill associated with the Hayward Trademarks.

36. Hayward's quality control requirements are also material in that they are designed to protect consumers and prevent them from receiving poor quality products. Consumers would find it material and relevant to their purchasing decision to know whether a Hayward Product they were considering buying was being sold by an Authorized Seller who is subject to Hayward's

9

quality control requirements or whether the product is being sold by an unauthorized seller who is not subject to, and does not abide by, Hayward's quality controls and over whom Hayward is unable to exercise its quality controls.

**D.  Genuine Hayward Products Come with Coverage under Hayward's Warranty Program; Sparkfish's Products Do Not**

37.  Hayward Products purchased from Authorized Sellers also come with coverage under Hayward's warranty program (the "Warranty Program").  Under the Warranty Program, Hayward warrants to the original purchaser of Hayward Products that the product and its components will be free from defects in materials and workmanship for a specific period of time set forth by the warranty applicable to the given product.

38.  Hayward extends Warranty Program coverage only to products that were sold by Authorized Sellers that are subject to Hayward quality controls.  Because products sold by unauthorized sellers are not subject to Hayward quality controls and Hayward cannot ensure the quality of such products, Hayward does not extend Warranty Program coverage to products sold by unauthorized sellers, such as Sparkfish.

39.  Hayward tells consumers that "[b]ecause Hayward cannot control the quality of products sold by unauthorized sellers, our limited warranties apply only to a product that was purchased from Hayward or a Hayward authorized seller, unless otherwise prohibited by law." Here is a screen shot of the warranty page (annotated) on Hayward's website:



40. The Warranty Program is a material component of genuine Hayward Products. Consumers who purchase Hayward Products with the Warranty Program receive the peace of mind that they are receiving a high-quality product that Hayward stands behind the product, and that if a defect occurs, they will have the ability to have the product repaired or refunded.

**E.     Sparkfish Is Not An Authorized Seller and, without Permission, Is Selling Products Bearing the Hayward Trademarks**

41. To ensure compliance with Hayward's quality controls and to guard against consumer confusion, Hayward regularly audits its Authorized Sellers, particularly those who are authorized to sell Hayward Products online.

42.  In the course of monitoring online listings of Hayward Products, Hayward discovered a high volume of products, over 100 products, bearing the Hayward Trademarks that Sparkfish is, without permission, advertising, offering for sale, and/or selling on Amazon.com under its "Sparkfish" storefront.  Examples of Hayward Products listed by Sparkfish on Amazon are shown below.



https://www.amazon.com/s?k=hayward&me=A27NGVKUPKCNVM&ref=nb_sb_noss

(accessed March 12, 2026)



https://www.amazon.com/Hayward-W3AQ-TROL-RJ-TL-AquaTrol-Above-Ground-Chlorination/dp/B07SS48C9K/ref=sr_1_3?dib=eyJ2IjoiMSJ9.q4RPKSkCwjRv-O2bGrqm_puL_zt3zIa3RfI08k1ui136dNfD7FEgN0pY3_bCHJcpuo0giiPUVF6WlTNs86r8JXmql-3FhTf72o8dQHLvuX-VhFNyEklWzOFd2Z76V8VrywTjcjV7alS6L9DBpOAIhM3-cWvep8QIxstp6TqbKfiAmLwb3lgcZ8T7-6C5-zNVR5A4k_GRzjNluRIObPvbVtsf-_Nkbi42PQ0xoUs90uU.RWQPXeXzY80az_G9e99dKzuUc0OxNmU43gH2ipaz3Fc&dib_tag=se&keywords=hayward&m=A27NGVKUPKCNVM&nsdOptOutParam=true&qid=1773347282&s=merchant-items&sr=1-3&th=1 (accessed March 12, 2026)

43. As seen in the examples above, the listed products appear in all respects to be genuine Hayward Products, and the Hayward Trademarks are used in the headlines. A consumer could thus be misled into thinking that the advertised products are genuine Hayward Products. But because Sparkfish is not an Authorized Seller, the advertised products are not genuine.

44. Adding to the confusion, the ads, such as the one shown immediately above, direct consumers to "Visit the Hayward Store." Consumers are likely to be misled by these advertisements into thinking that Hayward has authorized the Sparkfish storefront or the offered

products and not realize that these products are not sold by an Authorized Seller and are not genuine.

45. Indeed, consumers are unlikely to notice that the seller is "SPARKFISH," as shown in the magnified screenshot of the fine print below.



46. Sparkfish is not an Authorized Seller (or Authorized Online Reseller) of Hayward Products and is not subject to, and does not comply with, Hayward's Authorized Seller requirements or the Hayward Policies. Sparkfish did not obtain the Hayward Products it sells from Hayward. Sparkfish likely misrepresented its status to one or more of Hayward's Authorized Sellers in order to get Hayward Products for resale.

47. Further adding to the confusion, the products listings on the Sparkfish storefronts often use Hayward's own photos and product imagery. The use of Hayward's own photos of its products in the Sparkfish product listings further suggests a connection between Sparkfish's unauthorized and non-genuine products and Hayward's authorized and genuine products.

48. Sparkfish is not authorized to sell Hayward Products online and does not comply with the additional quality control and warranty requirements Hayward imposes on its Authorized Online Resellers.

49. Hayward has notified Sparkfish several times that it is offering for sale unauthorized, non-genuine products bearing the Hayward's Trademarks. Sparkfish had previously asked to apply to become an Authorized Seller of Hayward Products, but Hayward rejected that request.

50. Accordingly, Hayward has not approved Sparkfish to be an Authorized Online Reseller of its products. As such, Sparkfish has not agreed to be bound by the Hayward Policies, quality control standards, warranties, or procedures.

51. Notwithstanding this notice, Sparkfish continues to advertise and sell unauthorized, non-genuine products bearing Hayward's trademarks.

52. As set forth below, consumers have complained about the products Sparkfish sold to them and that Sparkfish is selling poor quality products.

53. Despite not being approved as an Authorized Seller or Authorized Online Reseller and not meeting the quality control requirements Hayward imposes on its Authorized Sellers, Sparkfish has sold, and continues to sell, products bearing the Hayward Trademarks on its retail storefronts.

54. Indeed, as seen in the examples above, Sparkfish's product listings use the Hayward Trademarks in multiple places, including on photos of the products, in the headlines, and in the description of the products.

14

**F.      Sparkfish Does Not Abide by Hayward's Quality Controls and Customer Service Requirements**

55.      Sparkfish has not abided by Hayward's quality control measures that are imposed upon genuine Hayward Products sold by Authorized Sellers

56.      Hayward's quality control policies also include, *inter alia*, the following measures:

- Inspection of Hayward Products for damage, defects, or tampering and removal or recall of such products;

- Training needed to accurately describe, demonstrate, and sell products, including training on product selection and safe use;

- Customer service and product support requirements, including taking appropriate steps to address complaints and negative reviews from customers;

- Assisting with product recalls and investigation of quality issues.

57.      Sparkfish has not abided by the above-listed measures, among others, thus interfering with Hayward's quality controls.  Hayward is unable to audit Sparkfish to ensure it is with Hayward's quality controls and/or close the account if it fails to comply with Hayward's quality control requirements.

**G      Sparkfish Is Infringing the Hayward Trademarks by Selling Products Bearing the Hayward Trademarks that Do Not Come with Warranty Program Coverage and that Are Not Subject to Hayward's Quality Controls and Customer Service Requirements**

58.      The products Sparkfish sells bearing the Hayward Trademarks fail to adhere to the extensive and legitimate quality controls that Hayward exercises over Hayward Products to protect consumers and Hayward's brand goodwill.

59.      The products sold by Sparkfish do not come with Warranty Program coverage.

60.      The products sold by Sparkfish are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

61. Because the products Sparkfish sells do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Sparkfish sells are materially different from genuine Hayward Products and are thus not genuine.

62. Sparkfish's unauthorized sale of products bearing the Hayward Trademarks is likely to, and does, create customer confusion because customers who purchase products from Sparkfish believe they are purchasing genuine Hayward Products, when, in fact, they are not.

63. Sparkfish's unauthorized sale of products bearing the Hayward Trademarks infringes the Hayward Trademarks and diminishes their value.

64. Despite these facts, Sparkfish has sold, and continues to sell, products bearing the Hayward Trademarks through its own websites and Amazon Storefronts and through other online platforms without Hayward's consent.

65. Through its interactive Amazon Storefronts and its own website, Sparkfish has advertised, marketed, and sold infringing products bearing the Hayward Trademarks to consumers in North Carolina.

66. On information and belief, through its interactive retail website and its storefronts on national e-commerce sites like Amazon, Sparkfish advertises and sells to residents and/or sold to consumers in North Carolina.

67. On information and belief, through its interactive retail websites and Amazon Storefront, Sparkfish has advertised and/or sold infringing products bearing the Hayward Trademarks to North Carolina in the regular course of business.

16

**H.     Hayward Has Attempted to Stop Sparkfish's Unauthorized Sale of Hayward Products but Sparkfish Continues to Willfully Infringe the Hayward Trademarks**

68.     After Hayward discovered products bearing the Hayward Trademarks being improperly sold on Sparkfish's website and storefronts on national e-commerce sites, Hayward investigated to determine the company or people behind the websites and storefronts. Hayward identified Sparkfish as the source.

69.     Hayward sent several cease-and-desist communications to Sparkfish notifying it of its infringements and unauthorized sales.  For example, in an email from Hayward's E-commerce Business Manager, Brian Griffin, Hayward warned Sparkfish that it is not authorized to sell Hayward Products and requested Sparkfish to remove the advertisements of all Hayward Products. See **Exhibit 1**, Email from B. Griffin to Sparkfish dated November 21, 2025. In a follow-up letter from Hayward's in-house legal department, Hayward further warned Sparkfish that it was continuing to infringe Hayward's trademarks and tortiously interfering with Hayward's business relations and thus could face a lawsuit. **Exhibit 2,** Email from Steven Halpern (VP, Legal, Hayward) to Lance Lenhart at Sparkfish dated February 24, 2026.  Hayward demanded that Sparkfish immediately stop selling products bearing the Hayward Trademarks.

70.     Sparkfish did not comply with Hayward's demands and continues advertising and selling products bearing the Hayward Trademarks.

71.     As discussed above, the products that Sparkfish advertises and sells are not genuine Hayward Products and are materially different from genuine Hayward Products because, among other reasons, they are not subject to, interfere with, and do not comply with Hayward's quality controls and warranties.

17

72. By continuing to sell non-genuine products bearing the Hayward Trademarks, Sparkfish has interfered with Hayward's ability to exercise control over products being sold bearing the Hayward Trademarks.

73. Sparkfish has also misled, and continues to mislead, consumers into believing they are purchasing genuine Hayward Products that comply with Hayward's quality controls when, in fact, they do not.

74. Sparkfish's actions infringe the Hayward Trademarks.

75. Further, Sparkfish's disregard of communications from Hayward and continued selling of non-genuine products, despite being informed of their unlawful conduct, demonstrates that they are acting intentionally, willfully, and maliciously.

**I. Sparkfish Is Tortiously Interfering with Hayward's Agreements With Its Authorized Sellers**

76. Hayward's agreements with its Authorized Sellers prevent those Authorized Sellers from selling Hayward Products to third parties who are not Authorized Resellers of Hayward Products but intend to resell the products anyway.

77. Sparkfish was informed of this prohibition in Hayward's previous cease-and-desist correspondence. That correspondence informed Sparkfish that the agreements between Hayward and Hayward's Authorized Sellers prohibit Authorized Sellers from selling Hayward Products to any person or entity that is not an Authorized Seller but intends to resell the products.

78. Hayward also informed Sparkfish that by purchasing Hayward Products from an Authorized Seller for purposes of resale, they were causing a breach of the agreements between Hayward and its Authorized Sellers and interfering with Hayward's agreements and business relationships. *See* **Exhibit 2.**

18

79.     Hayward also warned Sparkfish that by acquiring Hayward Products from Hayward's Authorized Sellers for purposes of reselling them, Sparkfish could be liable for tortiously interfering with Hayward's contracts and/or business relationships.  *See* **Exhibit 2.**

80.     Despite being so warned, Sparkfish has continued to acquire Hayward Products from Hayward's Authorized Sellers with the intent to resell them.

81.     Upon information and belief, Sparkfish does not disclose to Hayward's distributors and other Authorized Sellers that it is not authorized to sell Hayward Products but nonetheless intends to resell the Hayward Products it purchases from Authorized Sellers.

82.     Sparkfish has willfully and knowingly induced and are continuing to induce unknown Authorized Sellers to breach their agreements with Hayward so that they can acquire Hayward Products and unlawfully infringe upon the Hayward Trademarks by reselling the products.

**N.     Hayward Has Suffered Significant Harm As a Result of Sparkfish's Conduct**

83.     The unauthorized sale of products bearing the Hayward Trademarks through unauthorized sellers, such as Sparkfish, has caused significant harm to the Hayward brand.

84.     When consumers receive non-genuine, damaged, or poor quality products from unauthorized sellers, such as Sparkfish, those consumers are likely to associate that negative experience with Hayward.  In addition, because the unauthorized product is not covered under Hayward's Warranty Program, consumers will not receive a replacement or repair under warranty, further aggravating those consumer.  As such, Sparkfish's ongoing sale of unauthorized products bearing the Hayward Trademarks harms Hayward and the Hayward brand.

85.     Disgruntled consumers who have purchased unauthorized products from Sparkfish's storefronts or have had problems getting warranty coverage have complained on online review forums.  Due to the confusion caused by Sparkfish, these consumers have erroneously

associated the unfortunate experience, or are likely to associate the experience, with Hayward. Representative examples of consumer complaints about Sparkfish's unauthorized products are shown below.



https://www.amazon.com/product-reviews/B07SS48C9K/ (accessed March 12, 2026)



https://www.amazon.com/product-reviews/B07SS48C9K/ (accessed March 12, 2026)

86. Hayward has suffered, and will continue to suffer, significant monetary harm as a result of Sparkfish's actions, including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

87. Hayward has suffered, and will continue to suffer, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

88. Hayward is entitled to injunctive relief because Sparkfish will continue to unlawfully sell Hayward Products and infringe on the Hayward Trademarks, causing continued irreparable harm to Hayward's reputation, goodwill, relationships, intellectual property, and brand integrity.

89. Sparkfish's conduct has been knowing, intentional, willful, malicious, wanton, and contrary to law.

90.     Sparkfish's willful violations of the Hayward Trademarks and continued pattern of misconduct demonstrate intent to harm Hayward.

### FIRST CAUSE OF ACTION
**Trademark Infringement in Violation of Section 32  of the Lanham Act,
15 U.S.C. §§ 1114**

91.     Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

92.     Hayward is the owner of the Hayward Trademarks.

93.     Hayward has registered the Hayward Trademarks with the United States Patent and Trademark Office.

94.     The Hayward Trademarks are valid and in full force and effect.

95.     Sparkfish willfully and knowingly used, and continues to use, the Hayward Trademarks in interstate commerce for purposes of selling products bearing the Hayward Trademarks on the internet without Hayward's consent.

96.     Hayward has not authorized Sparkfish to sell products bearing the Hayward Trademarks.  Hayward has not authorized Sparkfish to sell Hayward Products.

97.     The products Sparkfish sells bearing the Hayward Trademarks do not come with Warranty Program coverage.

98.     Hayward has established and implemented legitimate and substantial quality controls that apply to genuine Hayward Products.

99.     Hayward abides by these quality controls and requires all of its Authorized Sellers, including Authorized Online Resellers, to abide by these quality controls.

100.    Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality, damaged, and defective products.

21

101. The products Sparkfish sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

102. Because the products Sparkfish sells bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Sparkfish sells are materially different from genuine Hayward Products and are not genuine Hayward Products.

103. Sparkfish's unauthorized sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

104. Sparkfish's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Sparkfishs offer are subject to and abide by Hayward's quality controls and Warranty Program when, in fact, they do not.

105. Sparkfish's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Sparkfishs offer for sale are genuine Hayward Products when, in fact, they are not.

106. Sparkfish's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Sparkfish offers for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

22

107. Sparkfish's unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

108. As a proximate result of Sparkfish's actions, Hayward has suffered, and continues to suffer, immediate and irreparable harm. Hayward has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

109. Hayward is entitled to recover its damages caused by Sparkfish's infringement of the Hayward Trademarks and/o to disgorge Sparkfish's profits from its willfully infringing sales and unjust enrichment.

110. Hayward is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Sparkfish's infringement and unless Sparkfish is permanently enjoined, Hayward will suffer irreparable harm.

111. Hayward is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Sparkfish willfully, intentionally, maliciously, and in bad faith infringed on the Hayward Trademarks.

## SECOND CAUSE OF ACTION
### Unfair Competition and False Designation of Origin in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

112. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

113. Hayward is the owner of the Hayward Trademarks.

114. The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

115. Sparkfish has willfully and knowingly used, and continues to use, the Hayward Trademarks in interstate commerce for purposes of selling products bearing the Hayward Trademarks without Hayward's consent.

116. Hayward has not authorized Sparkfish to sell products bearing the Hayward Trademarks. Hayward has not authorized Sparkfish to sell Hayward Products.

117. The products Sparkfish sells bearing the Hayward Trademarks do not come with Warranty Program coverage.

118. Hayward has established and implemented legitimate and substantial quality controls that apply to genuine Hayward Products.

119. Hayward abides by these quality controls and requires all of its Authorized Sellers, including its Authorized Online Resellers, to abide by these quality controls.

120. Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality, damaged, and defective products.

121. The products Sparkfish advertises and sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

122. Because the products Sparkfish advertises and sells bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Sparkfish sells are materially different from genuine Hayward Products and are not genuine Hayward Products.

24

123. Sparkfish's unauthorized advertisement and sale of products bearing the Hayward Trademarks interfere with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

124. Sparkfish's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Sparkfish offers are subject to and abide by Hayward's quality controls and Warranty Program when, in fact, they do not.

125. Sparkfish's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Sparkfish advertises and offers for sale are genuine Hayward Products when, in fact, they are not.

126. Sparkfish's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Sparkfish advertises and offers for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

127. Sparkfish's unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

128. As a proximate result of Sparkfish's actions, Hayward has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

129. Hayward is entitled to recover its damages caused by Sparkfish's infringement of the Hayward Trademarks and/o to disgorge Sparkfish's profits from their willfully infringing sales and unjust enrichment.

130. Hayward is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Sparkfish's infringement and unless Sparkfish is permanently enjoined, Hayward will suffer irreparable harm.

131. Hayward is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Sparkfish willfully, intentionally, maliciously, and in bad faith infringed on the Hayward Trademarks.

**THIRD CAUSE OF ACTION**
**Unfair Competition in Violation of Section 43(a) of the Lanham Act,**
**15 U.S.C. § 1125(a), by Passing Off**

132. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

133. Hayward and Sparkfish compete in the market for swimming pool equipment, such as pumps, filters, chlorination systems, and pool cleaning equipment.

134. Hayward advertises, offers for sale, and sells in commerce pool equipment such as pumps and filters bearing the Hayward Marks. As seen above, the Hayward Marks, or confusingly similar marks, appear on packaging, labels, and/or literature included with purchased infringing products and also in online advertising and marketing materials used in connection with the sale and marking of pool pumps, cleaners, and filters bearing the Hayward Marks.

135. As described above, Sparkfish advertises, offers for sale, and sells various pool equipment and parts that bear, or are promoted with, one or more of the Hayward Marks but that

26

are materially different from genuine Hayward Products. Hayward has not authorized this conduct.

136. Such conduct constitutes passing off in violation of Section 43(a) of the Lanham Act.

137. Sparkfish's passing-off is likely to cause, and already has caused, confusion, mistake, or deception as to the source or origin of the pumps and filters and has diverted sales from Hayward.

138. Sparkfish's conduct has caused, and is continuing to cause, irreparable injury to Hayward, including to its reputation and goodwill, and Hayward has no adequate remedy at law. Unless such unauthorized use is enjoined, Hayward will continue to be irreparably harmed.

139. Sparkfish was notified of its infringement and violation of Hayward policies but continued to sell the unauthorized products bearing the Hayward Marks. Accordingly, Sparkfish's conduct, as described above, has been willful, wanton, reckless and in total disregard to Hayward's rights.

140. By reason of Sparkfish's misconduct, Hayward has suffered, and will continue to suffer, monetary damages, and loss of goodwill.

**FOURTH CAUSE OF ACTION**
**Federal Trademark Counterfeiting**
**In Violation of Section 32 of the Lanham Act, 15 U.S.C. §1114**

141. Hayward repeats and realleges the allegations contained in the previous paragraphs as if fully set forth herein.

142. Hayward sells in interstate commerce products bearing the Hayward Trademarks. Genuine Hayward Products, including those bearing the Hayward Trademarks, are expertly designed and manufactured under exacting requirements and are subjected to rigorous testing and

27

often times certification by an independent standards-setting organization, such as the National Sanitation Foundation (NSF). Given the high quality of these genuine Hayward Products, and based on continuous use of the marks over many years, the Hayward Trademarks have come to stand for high quality products and have developed substantial goodwill. Consumers associate that high quality, reputation, and goodwill with a unique source, namely, Hayward.

143. Without authorization, but with both constructive and actual knowledge of Hayward's superior rights in the Hayward Trademarks, Sparkfish is advertising, offering for sale, and selling in interstate commerce counterfeit products bearing and promoted with the Hayward Trademarks. Sparkfish sells its counterfeit products in direct competition with Hayward's sale of genuine Hayward Products.

144. Sparkfish's uses of copies or simulations of the Hayward Trademarks on or in connection with its products—including, for example, in the product listings for the unauthorized, non-genuine Hayward Products promoted on Sparkfish's online storefronts—are likely to cause confusion, mistake, or deception as to the source or origin of the products, thus deceiving consumers into believing that the counterfeit products are genuine Hayward Products or are otherwise authorized, sponsored by or affiliated with Hayward.

145. Sparkfish's conduct has caused, and is continuing to cause, irreparable injury to Hayward, including to its reputation and goodwill, and Hayward has no adequate remedy at law. Unless such unauthorized use is enjoined, Hayward will continue to be irreparably harmed.

146. Sparkfish's conduct, as described above, has been willful, wanton, reckless, and in total disregard to Hayward's rights.

147. By reason of Sparkfish's misconduct, Hayward has suffered, and will continue to suffer, monetary damages and loss of goodwill.

148. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

149. This claim arises under the laws of the State of North Carolina.

150. Hayward is the owner of the Hayward Trademarks.

151. The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

152. The Hayward Trademarks are distinctive and widely recognized by the consuming public. Hayward Products are sold and purchased on internet retail platforms like Amazon.com, and EBay.com and through Hayward's network of Authorized Sellers throughout the United States, including North Carolina.

153. Hayward is widely recognized as the designated source of goods bearing the Hayward Trademarks.

154. Sparkfish willfully and knowingly used, and continues to use, the Hayward Trademarks in interstate commerce for the purpose of advertising, promoting and selling products bearing the Hayward Trademarks on the internet without Hayward's consent.

155. Hayward has not authorized Sparkfish to sell products bearing the Hayward Trademarks (or any Hayward Products) or to use the Hayward Trademarks in any manner.

156. The products Sparkfish sells bearing the Hayward Trademarks do not come with Warranty Program coverage.

157. Hayward has established and implemented legitimate and substantial quality controls that apply only to genuine (authorized) Hayward Products.

158. Hayward abides by these quality controls and requires all of its Authorized Sellers, including Authorized Online Resellers, to abide by these quality controls.

159. Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality, damaged, and defective products.

160. The products Sparkfish sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

161. Because the products Sparkfish sells bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Sparkfish sells are materially different from genuine Hayward Products.

162. Because the products Sparkfish sells bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Sparkfish sells are not genuine Hayward Products.

163. Sparkfish's unauthorized sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

164. Sparkfish's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Sparkfish offers are subject to and abide by Hayward's quality controls when, in fact, they do not.

165. Sparkfish's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because

30

that unauthorized conduct suggests that the products Sparkfish offers for sale are genuine Hayward Products when, in fact, they are not.

166. Sparkfish's unauthorized advertising, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because that unauthorized conduct suggests that the products Sparkfish offers for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

167. Sparkfish's unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

168. As a proximate result of Sparkfish's actions, Hayward has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

169. Hayward is entitled to recover punitive damages because Sparkfishs have acted with malice and aggravated and egregious fraud.

170. Hayward is entitled to recover its attorneys' fees and costs.

**SXITH CAUSE OF ACTION**
**Violation of North Carolina Unfair and Deceptive Trade Practices Act**
**§ 75-1.1, *et seq.***

171. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

172. Plaintiff is the owner of the Hayward Trademarks.

173. The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

174. Sparkfish willfully and knowingly used, and continues to use, the Hayward Trademarks in commerce, including through their own interactive websites, for the purpose of

31

advertising promoting, and selling products bearing the Hayward Trademarks without the consent of Hayward.

175. Sparkfish's advertisements and promotions of products unlawfully using the Hayward Trademarks have been disseminated to the relevant purchasing public, including to consumers in North Carolina.

176. At all relevant times, Sparkfishs were engaged in commerce in the State of North Carolina and has been affecting North Carolina commerce.

177. Sparkfish uses the Hayward Trademarks with the intent that consumers will believe that Sparkfish is selling genuine Hayward products.

178. Hayward has not authorized Sparkfish to sell products bearing the Hayward Trademarks. Hayward has not authorized Sparkfish to sell Hayward Products.

179. Hayward has established legitimate and substantial quality control procedures over Hayward products.

180. Hayward abides by these quality control procedures and requires all of Authorized Sellers to abide by these quality controls.

181. Hayward's quality controls are material in that they protect consumers and prevent those consumers from receiving poor quality products that could harm them. When a consumer is deciding whether to purchase a product bearing the Hayward Trademarks, whether the product is subject to and abides by Hayward's quality controls would be relevant to the consumers' purchasing decision.

182. The products Sparkfish advertises, promotes, and sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements and do not come with Warranty Program coverage.

183. Because the products Sparkfishs advertises, promotes, and sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Sparkfish sells are materially different from genuine Hayward products.

184. The products Sparkfish sells are materially different from genuine Hayward products because they do not come with Warranty Program coverage and are not subject to Hayward's quality controls.

185. Because the products Sparkfish advertises, promotes, and sells bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Sparkfish sells are not genuine Hayward products.

186. Sparkfish's unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

187. Sparkfish's unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Sparkfish offer for sale are subject to, and abide by, Hayward's quality controls and come with Warranty Program coverage when, in fact, they are not.

188. Sparkfish's unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because those unauthorized actions suggest that the products Sparkfishs offers for sale are genuine Hayward products when, in fact, they are not.

189. Sparkfish's unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks are likely to cause confusion, cause mistake, or deceive consumers because those unauthorized actions suggest that the products Sparkfish offers for sale are sponsored, authorized, or otherwise connected with Hayward when, in fact, they are not.

190. Sparkfish's unauthorized and deceptive use of the Hayward Trademarks is material and likely to influence customers to purchase the products they sell, as consumers are likely to believe that products Sparkfish advertises using the Hayward Trademarks are genuine Hayward products that are subject to, and abide by, Hayward's quality controls requirement and come with benefits associated with authentic Hayward products, when, in fact, they do not.

191. Sparkfish's unauthorized use of the Hayward Trademarks in advertising, and otherwise, infringes the Hayward Trademarks.

192. Sparkfish's use of the Hayward Trademarks in connection with the unauthorized advertising, promotion, and sale of Hayward products is an unconscionable, deceptive, and fraudulent business practice which violates N.C. Gen. Stat. § 75-1.1 ("UDTPA").

193. Sparkfish misrepresents the Hayward products they sell as genuine Hayward Products by using the Hayward Trademarks on its product headlines and in the description of its products.

194. Sparkfish is trying to pass off their products as genuine Hayward products or are falsely associating their products with Hayward.

195. Sparkfish is deceptively and confusingly suggesting to consumers that Hayward has authorized or sponsored the products that they are selling, or that Sparkfish is somehow affiliated with Hayward, when it is not.

196. Sparkfish's actions and conduct were intended to and did cause and continues to cause confusion among consumers as to the designation and source of the products Sparkfish sells.

197. Sparkfish's conduct is calculated to deceive the public and constitutes unfair and deceptive business practices.

198. As a direct and proximate result of Sparkfish's unlawful, unfair, and infringement conduct, Plaintiff has suffered, and continues to suffer, immediate and irreparable harm. Plaintiff has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

199. Pursuant to N.C. Gen. Stat. § 75-1.1, Plaintiff is entitled to an injunction enjoining Sparkfish's unlawful conduct, and an award of treble damages and attorneys' fees. Unless enjoined by this Court, Sparkfish will continue to engage in unfair, unlawful, and misleading business practices as alleged in this complaint, in violation of the UDTPA. Hayward and the public will be irreparably harmed if an order of the Court enjoining such practices is not granted. Hayward is entitled to a preliminary and permanent injunction.

200. Hayward has no adequate remedy at law for the injury alleged in this cause of action and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

## SEVENTH CAUSE OF ACTION
### Tortious Interference With Contract And Business Relations

201. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

202. Hayward Products are sold exclusively through its network of Authorized Sellers, including Authorized Online Resellers.

203. Hayward has entered into agreements with Authorized Sellers to sell Hayward Products. These agreements specifically prohibit Hayward's Authorized Sellers from selling Hayward Products to unauthorized resellers, such as Sparkfish.

204. Sparkfish has sold a high volume of Hayward Products through its websites and/or through storefronts on national e-commerce sites like Amazon.

205. Hayward has not itself sold any Hayward Products to Sparkfish and has not authorized any of its Authorized Sellers to sell to Sparkfish.

206. Based on these facts, it is plausible and a reasonable inference that Sparkfish has purchased the Hayward Products they are reselling from one or more of Hayward's Authorized Sellers.

207. Sparkfish knew that Hayward's agreements with its Authorized Sellers prohibit Hayward's Authorized Sellers from selling Hayward Products to any seller who, such as Sparkfish, is not an Authorized Seller and intends to resell the products.

208. Sparkfish had notice of this prohibition through the cease-and-desist letter they received from Hayward.

209. Despite knowing of this prohibition, Sparkfish intentionally, knowingly, and willfully interfered with Hayward's agreements with its Authorized Sellers by inducing the Authorized Sellers to breach their agreements and sell products to Sparkfish so they could resell them on the internet.

210. After being notified of this prohibition, Sparkfish continued to intentionally induce one or more of Hayward's Authorized Sellers to breach their agreements by continuing to acquire products from Hayward's Authorized Sellers for the purposes of selling them on the internet.

211. In inducing Hayward's Authorized Sellers to breach their contracts with Hayward, Sparkfish acted with a wrongful purpose—specifically, unlawfully infringing upon and materially damaging the value of the Hayward Trademarks by reselling the products they obtained from Authorized Sellers in violation of their contracts.

212. Sparkfish also acted with wrongful means—specifically, upon information and belief, Sparkfish concealed and continue to conceal their intent to resell the Hayward Products when it purchased the products from Authorized Sellers.

213. Because Authorized Sellers are prohibited by contract from selling products to persons or entities who are not authorized sellers but intend to resell the products, Authorized Sellers would not have sold products to Sparkfish if they had known that Sparkfish was not an Authorized Seller and intended to resell those products.

214. Sparkfish knew that Authorized Sellers would be breaching their agreements by selling products to Sparkfish for purposes of resale, and would accordingly consider Sparkfish's intent to resell material to their decision to sell products to Sparkfish.

215. Accordingly, Sparkfish's concealment of their intent to resell products is a wrongful omission of a material fact, which wrongfully induced Authorized Sellers to breach their agreements with Hayward.

216. Authorized Sellers have complained to Hayward about Sparkfish's unauthorized reselling of Hayward Products and have threatened to discontinue their business relationship with Hayward because of Sparkfish's actions.

217. Based on these facts, there is no justification for Sparkfish's actions.

218. Hayward has no way of knowing the full extent of the sources of Sparkfish's products and, therefore, Hayward must take discovery in this action to learn the specific identities

37

of the Authorized Sellers that sold Hayward Products to Sparkfish. Sparkfish, however, know the sources of the Hayward Products they have obtained and the basis for Hayward's claim of tortious interference. Hayward's agreements with its Authorized Sellers are a specific class of contract that Sparkfish caused Authorized Sellers to breach when they purchased Hayward Products from Authorized Sellers for resale.

219. Sparkfish's actions have caused injury to Hayward for which Hayward is entitled to compensatory damages in an amount to be proven at trial.

220. Hayward is entitled to recover punitive damages because Sparkfish has acted with malice and aggravated and egregious fraud.

221. Hayward is entitled to recover its attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION
### Unjust Enrichment

222.    Hayward repeats and realleges the allegations contained in the previous paragraphs as if fully set forth herein.

223.    Sparkfish has been unjustly enriched at the expense of Hayward.

224.    Sparkfish has knowingly received and retained benefits including revenue, profits, and other economic advantages, derived from the unauthorized use of the Hayward trademarks, brand, goodwill, and quality control.

225.    Sparkfish's enrichment was obtained through improper and wrongful conduct, including the sale, distribution and promotion of unauthorized and infringing Hayward products.

226.    Hayward conferred these benefits indirectly and involuntary and Sparkfish's retention of such benefits without compensation is inequitable and unjust.

227.    As a result direct and proximate result of Sparkfish's unjust enrichment and unlawful conduct, Hayward has suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Hayward asks for relief and judgment as follows:

A.    Judgment in favor of Hayward and against Sparkfish in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.    a preliminary and/or permanent injunction barring Sparkfish and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Sparkfish, and all of those in active concert and participation with Sparkfish (the "Enjoined Parties") from the following conduct:

i)      advertising or selling, via the internet or otherwise, all Hayward Products;

ii)      using the Hayward Trademarks in any manner, including advertising on the internet;

iii)      importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Hayward Products as well as any products bearing the Hayward Trademarks;

iv)      disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Hayward Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Sparkfish has sold bearing this trademark;

C. A preliminary and/or permanent injunction requiring the Enjoined Parties to complete the following actions:

i)      to remove from any and all websites and storefronts operated by Sparkfish any reference to any Hayward Products and he Hayward Trademarks;

ii)      to request removal from internet search engines (such as Google, Yahoo!, and Bing) and to remove from the internet any uses of the Hayward Trademarks that associate Hayward Products or the Hayward Trademarks with the Enjoined Parties or the Enjoined Parties' website;

iii) to remove unauthorized uses of the Hayward Trademarks from the internet, including from its own website and any third party e-commerce websites such as www.amazon.com;

D. An award of damages under 15 U.S.C. § 1117, and/or other applicable law, including, without limitation, disgorgement of profits, lost profits, and/or any other damages sufficient to compensate Hayward for Sparkfish's trademark infringement, counterfeiting, unfair competition, and false designation of origin;

E. An accounting to determine the proper amount of damages;

F. A three-fold increase in damages under 15 U.S.C. § 1117 and/or other applicable law, for Sparkfish's willful, wanton, and deliberate acts of infringement and unfair methods of competition and deceptive practices;

G. An award pursuant to 15 U.S.C. § 1117 and/or other applicable law of costs and pre- and post-judgment interest on Hayward's compensatory damages;

H. An award pursuant to 15 U.S.C. § 1117 and/or other applicable law of statutory Damages.

I. An award of attorneys' fees, costs, and expenses;

J. Enhanced damages, including double or treble damages under the Lanham Act and/or treble damages under Section 75-16 of the UDTPA (N.C. Gen. Stat. § 75-16); and

K. Such other and further relief as the Court deems just, equitable and proper

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Hayward demands a trial by jury on all issues so triable.

41

Respectfully submitted this the 23rd day of March 2026,

HAYWARD INDUSTRIES, INC.
By its attorneys,

*/s/ Patrick Grayson Spaugh*
Patrick Grayson Spaugh (N.C. Bar No. 49532)
**Womble Bond Dickinson (US) LLP**
One Wells Fargo Center
Suite 3500
301 South College Street, Suite 3500
Charlotte, NC 28202
Patrick.Spaugh@wbd-us.com

Erik Paul Belt*
Anne E. Shannon*
**McCARTER & ENGLISH, LLP**
265 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 449-6500
ebelt@mccarter.com
ashannon@mccarter.com

*Pro hac vice* application forthcoming

*Attorneys for Plaintiff Hayward Industries, Inc.*